May it please the court, your honors, Michael Shire on behalf of the appellants Lee and Nancy Enright. Your honors, the primary issue on appeal is whether the first amended counterclaims in this case state plausible causes of action under Idaho state law against each of the two defendants, assuming every allegation in the complaint is true. Ironically, after granting leave to amend over objection by Bank of America to promote resolution on the merits, the district court said no, that the amended pleading in fact did not plead cause of action under Idaho law and deprived the Enrights of their ability to develop a factual record and ultimately have the dispute decide on the merits for better or worse. Well, in a sense that's to your client's advantage because everything your client said will take as true. Correct. So factual record can only take away from that, so you've got the best facts you're ever going to get. I'm not following. Because we take the complaint as true or your counterclaim as true, you've got the best facts you're ever going to have. So development of the factual record could only hurt you. Well, I'm not sure I agree, your honor. I think we knew... You think there were better facts out there than you pled? I think there are additional facts out there that might not yet have been uncovered because we all know that oftentimes that's what happens through discovery and that's why we take discovery. And so we were deprived of that. There are facts out there that are, I guess I'll say it this way, you can plead anything in your complaint that you think is reasonably likely to be true, but there might be some unsuspected but favorable facts out there yet. I believe that to be the case. And that's why oftentimes you see complaints amended, sometimes several times once discovery begins and that's one of the great benefits of discovery under the civil rules. You're right. However, there are amendments that are made because you haven't pled enough facts. So let's just go forward. That's correct, your honor. And I believe we did plead enough facts at this point to have survived a Rule 12b6 motion. Why did the district court, of course, as the $64,000 question, hold that on this first amended counterclaim the facts were insufficiently pled to prove a plausible claim under Idaho law? Your big problem is under Idaho law that banks, unlike other states, don't have a fiduciary relationship. And therefore, in order to get out from that very straight law in Idaho, which I was subject to, you've got to plead more. You've got to plead something different. You've got to plead something better. So there's the question. Did you? Yes, sir. Not only did we, I can go one step further and tell you that we pled something better. We sued a non-bank defendant that doesn't lend money, didn't lend money to the Enwrights. There's not a mention of that non-bank defendant in the district court's opinion dismissing the claims. And we also alleged that the agent of that non-bank defendant had no lending authority. Our complaint is very clear that vis-à-vis the non-bank defendant, the Enwrights approached the entity for financial advice. And it's very clear. Some of the most… Was there any long-standing relationship between Corker and your clients? It's certainly not stated in the complaint. I didn't see any. In other words, the only thing that happened is your clients went in to see Corker to get a loan. Incorrect. That's not the way, that's an incorrect… Well, that's the first time they got together. That's incorrect. If you look at paragraph four of the complaint… Well, I tried to find out just a minute ago. I asked you, is there any long-standing relationship or ongoing relationship? You say no. It's not inconsistent where the… I don't… It's not in the complaint why the Enwrights went in to Bank of America or that they specifically approached Mr. Corker. What's in the complaint in paragraph four is that on around June 1, 2006, and this is very important, Your Honors, Dr. Enwright went to the Bank of America branch in Ketchum, Idaho to consult with the Wealth Management Division about advice, how he and his wife could accomplish their goals. In other words, they were looking for investment advisors concerning their portfolio and advice on their real properties. Let me ask you another question because I've read what you pled. What type of fiduciary identified in Sargent do you claim that Corker was? Corker was a fiduciary relationship pled under Ohio law because Corker was a financial advisor. Listen to my question. Sure. In Sargent, there are fiduciaries listed, types of fiduciaries listed. Is Corker any one of those types? I don't know. What I do know is... The best I see you pled is that Corker, that your clients placed trust in Corker. It certainly is pled, but there are many more facts in a conclusory allegation. What facts are alleged that would show Corker was acting as a financial advisor in encouraging your clients to take out the loan? He had no lending authority, so he clearly was not a loan officer. He worked for an entity that was not a bank that didn't loan money. And in addition, Your Honor, when Mr. Corker presented to the Enwrights after many meetings, and this I believe is in paragraph 17 of the first amended complaint, that his advice is that they borrow more money to downsize and get into a smaller property. They were very concerned because they had no source of income other than interest in the IRA account. And the complaint alleges that they expressed that concern to their trusted financial advisor and asked him if this was the prudent thing to do. And he said... Do you have any more? I don't want to limit your response because I've put down what I think he would have alleged, you would have alleged. What facts do you allege that your clients reasonably believed Corker was acting in their financial interest? We believe Corker was not acting in their financial interest. No, no, just a minute. What facts do you allege that you suggest that your clients could have believed he was acting in their interest? Oh, certainly that he was a wealth management advisor. They came to him to ask for advice and due diligence to him, and he had the right qualifications for that advice. He did not disclose that he was to receive compensation and other benefits for directing loan business to Bank of America. So there was no reason for them not to have that trust in the financial advisor. They walked in expecting to have a trusting relationship with a financial advisor. And so in that, we plead that that should be sufficient. We questioned Corker's experience, gave him background data on financial affairs. That's the best, Jeff. Well, that's certainly... You think it's enough, but I'm just trying to get it out there, so I have it listed to see if I had all your facts that you pled. Thank you. Yeah. So if you look at... Let me ask it this way. Assume for a moment that we were to conclude that under Idaho law there is no fiduciary relationship. There's a secondary kind of, I don't know, quasi-category under Idaho law that if there's a special relationship, it falls short of a fiduciary relationship. Nonetheless, the defendant under the special relationship would be liable for negligence. Is there some argument for that kind of special but non-fiduciary relationship? Yeah, there sure is. And that argument is, and it's also pled in the complaint, that Mr. Corker held himself out, and the wealth management... Well, what we believe is a wealth management division turned out to be Merrill Lynch, certainly held themselves out as having expertise and knowledge in financial advisory services, and so that triggers the special circumstances test under Idaho law that's applicable to non-fiduciary relationships such as plumbers, landscapers, engineers, and so on and so forth. And so there's certainly, I think, if you look at the complaint, there are several allegations that Merrill Lynch and Mr. Corker held themselves out as experts and that, in fact, the enterites relied on that expertise, which also then takes the case of negligence claim out of the economic loss rule. We've got Idaho case law that says an insurance agent has this special relationship. People providing certain professional services have this special relationship. It strikes me as we need to at least extrapolate somewhat from those cases to find a special relationship here where someone holds himself out as a financial advisor but without a fiduciary relationship. Well, I'd look at the Duffin case out of the Idaho Supreme Court that held that a seed agent, a seed agency that certifies seed... where they certify that these are good potato seeds and then it turns out they really aren't. Again, it's sort of like professional services. I mean, there are these cases out there in Idaho law, but to move from those to find that there is a special relationship giving rise to a cause of action or negligence to people who hold themselves out as banks or agents of banks or loan officers or financial advisors, that's going to open up an enormous field of liability in Idaho that I don't yet quite see in the case law. Well, here's a distinction that we need to draw on the way this case was played. We're not asking for any extension of that particular concept to bankers, to loan officers. That's not what Mr. Corker was and that's not what Bank of America Investment Services slash Merrill Lynch was. They were not bankers. The beginning of the largest mistake below was in holding that the concept of a lender-borrower relationship being non-fiduciary in nature simply doesn't apply to the allegations. It ignores all of the well-plead allegations that set out a plausible claim that there is a fiduciary relationship here. And we're not at the stage of the case where we have to prove there was a fiduciary relationship. Walk me through, I've read it, but walk me through again so I've got it firmly in mind right now, his relationship to the lending agencies. Who's he employed by? What's the relationship and so on? The way it was played is that Mr. Corker is not part of the Bank of America Commercial Loan. We would help if you tell me who he is part of. Bank of America, well, it was Bank of America Investment Services, which was separate from the bank. It was a non-bank entity that then acquired Merrill Lynch. Was it owned by the bank? I believe it was a subsidiary of the bank, but it didn't lend money. They didn't go there to ask for money. Mr. Corker specifically, the well-put allegation is he didn't have lending authority. So this whole idea that... So he's employed by Bank of America Investment Services, BOIS. BOIS is a subsidiary of Bank of America. Yes, sir. And he recommends to them that they engage in these various lending activities, borrowing activities. Is he compensated? Does he get a commission on any of these loans? We allege that it was not disclosed to us, but that in fact he did receive compensation and professional advancement and was incentivized to direct wealth management clients, financial planning clients, to the lending department of Bank of America. And that dual agency, that undisclosed relationship, is part and parcel of the negligence and breach of fiduciary duty claims here. What does the sign on the building say when they walk in? We didn't plead anything about the sign on the building, but I can tell you what we plead about the sign on Mr. Corker's desk, Vice President Wealth Management. And what's the company name as they walk in the door? I mean, is there anything pledged? Are you pleading that they knew that he was employed by BOIS? No, at the time they walked into the bank in 2006, they believed that he was a Vice President of the Wealth Management Division of Bank of America. We now know. This is where sometimes discovery allows you to amend a complaint. So it sounds like they knew or thought they knew he was an employee of the bank. Without lending authority. Yes, in a completely separate department of the bank that didn't lend money. They didn't come to borrow money. But what I'm trying to figure out is if we were to hold that there's a cause of action for negligence against Mr. Corker and then his employer, I'm trying to figure out, okay, how had he held himself out to the enrights as they walk in? Well, you're telling me they walked into a Bank of America and they see some guy that has on his desk, Vice President Wealth Management. Sounds like he's an employee of the bank. Now you tell me he's not. But if I'm walking into the bank and somebody says Vice President Wealth Management, my reasonable conclusion is he's an employee of the bank. Well, those are hypothetical facts and assumption that may be easy for us to make standing here in Seattle. But when Mr. Enright walks into the bank and does not look for a loan officer, does not ask for a loan officer, does not ask to fill out a credit app, does not ask to fill out a loan application, instead asks to be shown somebody who can provide him financial advice. And that's what the complaint says, I came in looking for financial advice. Okay, got it. Let's hear from the other side. You've used up all your time or we've taken it, but we'll give you a chance to respond. Thank you. Good morning. May it please the Court, my name is Kelly McConnell, and I'm here today as counsel for Bank of America and Merrill Lynch, Pierce, Fenner, and Smith, who is the successor in interest to Bank of America Investment Securities. I'll call them Merrill Lynch today because it's easier. At the time of the events that took place in the amended counterclaims, however, the merger with Merrill Lynch and Bank of America Investment Securities had not yet happened. And just to clear up one point in the record, Merrill Lynch is not a subsidiary of Bank of America. But at the time of the events complained of, was BOIS a subsidiary of Bank of America? It was an affiliate for sure. I believe it was not. I believe they are sister corporations that are ultimately held by the same bank holding corporation. The disclosures are made in our disclosure statement. To address one point the Court asked about the branch in Sun Valley, Idaho, it was a Bank of America branch. There's another bank of there now, and it did have a sign that said Bank of America. So the issue here today clearly is, is there a fiduciary relationship or a special relationship between the bank and or Merrill Lynch and the Enrights? The fiduciary duty means that my clients would have had to put the interests of the Enrights ahead of their own interest. Let's work on the special relationship because I think it's easier I think for you to show there's no fiduciary relationship. It's a closer question for me as to whether there's a special relationship such that there might be a cause of action for negligence. Correct, Your Honor. And the test for a special relationship and a fiduciary relationship are actually quite similar. The Court would look to items like the reposing special trust and confidence. One of the elements in both of these is that the allegations must state that in this case either the bank or Merrill Lynch had reason to know or knew that that relationship was happening and that trust was there. There can also be other factors that give rise to a special relationship as discussed in the context of an insurer and an insured. Yeah, right. Generally, or another factor might be that the fiduciary is entrusted to hold property or to take action. I'm not interested in a fiduciary. It doesn't stick with special relationship. And we've got a couple of cases. We know in Idaho law that the insurance agent has a special relationship. We know, and I'm not sure quite how to generalize from it, but the seed certification agency in Duncan was a special relationship. Certain professional relationships are special relationships. I have to say that it may be a stretch, but for me it's not much of a stretch. If somebody holds himself out to be an advisor in a wealth management office in a bank and you come in and say, what should I do? And he says, well, here's a good idea. Well, that sounds like something close to a special relationship. Instead of him saying, you know, I'm going to get a commission on this. Here's what you can do, but I'm not going to advise you to do it one way or the other. That's your business. No one, he doesn't say that. So why is this not a special relationship? Your Honor, because the starting point under Idaho law is that commercial relationships and particularly a relationship between a lender and a creditor or a bank and a borrower is not a special relationship. Not just not a fiduciary relationship, but in the special relationship cases, not a special relationship. The burden is on… Make of this that he's not quite an employee of the bank. He gets a commission from setting this up, but he's not a loan officer. I mean, this point was insisted on by the other side. What do we do with that? Your Honor, I can explain the situation with the agency. I believe there's conflicting facts in the allegations that the End Rights Council is better explaining because I think they conflict and they cannot be reconciled. The allegations state that the End Rights came to Bank of America to speak with a private banker. The bank does take the position, and I can state here today, that Mr. Corker was acting within his authority as an agent of Bank of America at all times during these transactions. The End Rights have also alleged that Mr. Corker was an agent of Merrill Lynch. Now, in this particular case, there were no financial products offered by Merrill Lynch. There were no retirement accounts. There were no investment services. There was absolutely no relationship or contract with Merrill Lynch. So it's our position that in the context of working with the End Rights, Mr. Corker was not an agent of Merrill Lynch. Here's what bothers me about this case. They come in seeking advice and seeking loans. The bank learns, Corker learns, that the house they think is worth 1.7, excuse me, $17 million. And the appraisal the bank gets says it's worth $10. He doesn't tell them that. He doesn't say, hey, wait a minute, your numbers are way off. Things start to go south after the crash. They've got an interest-only loan with a balloon payment at the end. Mr. Corker advises them to make payments out of the IRA, which is the only asset they've got that's not a real property asset. And this advice is awful. There's just no other word for it but awful. Doctors are very good doctors, as I assume Dr. Enright was, but he doesn't sound like he was very sophisticated. Mr. Corker, I don't know how he slept at night when he went home and said, here's what I persuaded these people to do. I mean, he should have known this was awful advice. So they come in, wealth management on his desk, vice president, and he says, here's some things that you can do, and I would advise you to do them. And you say he owes them no duty whatsoever. That's your position. The position is that he owes them the duty that's set forth in the loan documents, and there is no fiduciary duty set forth there. No, I'm pleased you don't talk about fiduciary duty because I want the one that's a little harder, which is the special relationship. Thank you, Your Honor. On one point, I would like to make a clarification. The amended counterclaims do claim that the bank obtained a $10 million appraisal. They also claim that the bank should be held as being negligent for not obtaining an appraisal. So there are contradictory facts within the counterclaims on that point. The allegations that the Enrights have made to support a special relationship are exactly the same allegations that they make to support a fiduciary relationship. I understand that, but the test is different. The test starts with the starting point that in a commercial contractual relationship, there is no special relationship. They have to show facts and circumstances that give rise to a situation where that special relationship happens. And in Idaho... Counsel, can I ask you a question? Sure. If someone walks into what they think is a bank and there's a distinguished person sitting at a desk with a sign that says, Again, they say, I'm here to get some financial advice. And they ask that distinguished person for advice. And they get terrible advice. Who can they sue? They would not have a cause of action in Idaho. In that situation. If there is a contract that sets forth the obligations, then we would be here interpreting the contract. That's not our case. There is no written agreement with respect to this. The cases in Idaho where the core relationship here is creditor and debtor, the core advice given was about the loan products. It was not about the other products that were offered by Merrill Lynch or by Bank of America. The only relevance to the situation of the retirement accounts of Dr. and Mrs. Enright was that that could be used to repay the loan. And I would take issue with that being a terrible idea.  Some banks do use their retirement accounts to pay their mortgages on fixed income. That's the situation that we have here. Well, if you assume that it's terrible advice, and I have to say my quick understanding of this based only on reading of the counterclaim is that it was terrible advice. I guess you could prove that it wasn't terrible advice, but that would be on the assumption that there's some special relationship. If the panel were inclined to hold that there is a special relationship, but the panel was somewhat nervous about Idaho law, obviously we have no authority ourselves to make Idaho law or whatever, would it be a good idea to certify this question to the Idaho Supreme Court? If the court feels that there's not existing case law that gives adequate guidance, that could be a question for certification to the Idaho Supreme Court. I believe that there, in the existing case law from the Idaho Supreme Court, there is adequate, there's a path that can be followed to reach the determination that these just are not the facts on which a special relationship would arise. I have to say, as I read the case law, the easiest path is the one that would advantage you. It's a slightly, I don't know what the right metaphor would be, it's a slightly uphill path to reach a special relationship holding that would benefit the enrights. But it's not an impossible path. No, it's not an impossible path, because I'm not saying that a special relationship or a fiduciary relationship cannot arise between a debtor or a creditor or in a commercial context. What I'm saying is the starting point is that there is no such relationship, and there have to be allegations of something more. Here we don't have a family relationship between the parties. They weren't business partners. They weren't members together in an LLC. The bank and my clients didn't hold any funds or make any trades for the enrights. There are no other facts or circumstances. The only advice given and the only advice identified by the court as a concern relates to repayment of the loans, and that is not sufficient under Idaho law to create a special relationship. Finally, I would like to just raise one point about the judicial estoppel argument. The amended complaint was brought, well, let me back up. The enrights made a motion to amend their complaint before a decision was rendered on the first motion to dismiss. The standard that the enrights proposed for amendment of that complaint was a showing of good cause. The good cause was they did not know about Merrill Lynch until the deposition happened of Mr. Corker after the cutoff date for Joinder and amendment of the counterclaims. My client Merrill Lynch would not be here today had that representation not been made to the court. The standard is good cause as set out not only in the order itself but in the case law cited by the enrights. The district court, once good cause is shown, the person opposing the amendment or Joinder has to show that it is in the interest of justice for the amendment not to be allowed. The district court specifically found that it was in the interest of justice to allow the amendment and therefore applied the correct standard. So I would request that this court judicially stop the enrights from claiming in their brief today, in their opening brief and in front of this court that at all times they relied upon Merrill Lynch as a financial advisor because that is directly contradictory to the allegations they made in their motion to amend. And if the court has any other questions for me I'd be happy to address those. I think that's it. I guess I have one other question on this amendment issue. What's the standard as to whether there should have been an allowance of another amendment? The standard for an amendment on a motion to dismiss is whether facts could be alleged that would give rise to a viable cause of action. However, in our circumstance under the scheduling order that was issued by the district court the motion to allow the amendment was made after the deadlines had been set forth. And the order specifically states that amendment and joinder shall only be allowed for good cause. So both by court order and by the authority cited by the enrights in their motion to dismiss, the standard is good cause. Okay, thanks. Okay, thank you. Now you used up all your timer. We used it. Let's put two minutes on the clock for you. Thank you for the courtesies, Your Honor. Quickly, I'd like to encourage not to so quickly dismiss the fiduciary relationship between a financial advisor and a client. I would really like you to respond to the last argument. To the judicial estoppel? Yeah, because I'll be fair. It seems to me that what you represented to court in order to get a chance to sue Merrill Lynch, you now directly allege the opposite. I don't think so, Your Honor. Well, answer her point then. Sure. Because I'm only telling you I'm intrigued by that point, and I think you need to answer it.  Oftentimes you, through discovery, find out who the actual defendant should be. You don't have knowledge when you initially file the complaint. It was not disclosed to the enrights when they approached the wealth manager at Bank of America, who we work for. They just knew. They weren't coming in to get loans. They were coming in to get financial advice. After some discovery was taken on the deficiency claim, it came to light that, in fact, Mr. Corker worked for either Merrill Lynch or its predecessor, and therein lies the substance of an amendment to a complaint. We now know who the wrongdoer was, and so you amend your complaint and name your wrongdoer. It's simply nothing more than adding to a complaint facts developed through discovery that bolster the initial allegations. Namely, that the enrights were not dealing with a bank, were not dealing with a lender, did not go in to borrow money. They were dealing with what turned out to be Merrill Lynch or its predecessor, Bank of America Investment Services. So there's no chicanery here. There's no playing fast and loose with courts. There's no allegation that they relied on the name Merrill Lynch and Merrill Lynch's reputation or what Merrill Lynch does. That might not be so good. But in this case, there's nothing like that. They found out who the right defendant was. It's kind of like your classic John Doe cases. I was in counsel. There could have been a John Doe named as a defendant. There wasn't. And when you figure out who those John Does are, you amend your complaint to name the actual defendant. So, you know, to throw around accusations that counsel somehow did something to mislead this court or a federal district court, it's not who I am. That's not who my law firm is. And predecessor counsel didn't do that either. But the fact remains, and it was pled, discovery taught us who the right defendant should be. And so we amended the complaint to name the correct defendant. Okay? Thank you very much. Bank of America and Merrill Lynch v. Enright now submitted for decision. At this point, we'll take a break, probably of about 10 minutes. Thank you, Judge.
judges: W. Fletcher, Gould, N.R. Smith